Filed 4/15/14  P. v. Walker CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056938 |
| v. | (Super.Ct.No. FVI1000852) |
| DEJON DEANDRE WALKER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  John M. Tomberlin, Judge.  Dismissed.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Dejon Deandre Walker appeals after a guilty plea. He contends the trial court improperly allowed his trial counsel to withdraw at sentencing, violating defendant's right to representation by counsel of his choice. We agree that the trial court violated defendant's Sixth Amendment right, but there is no effective relief which can be afforded to him. We therefore dismiss the appeal as moot.

FACTS AND PROCEDURAL HISTORY

1. The Crimes

In the night and early morning hours of April 25-26, 2010, the victim Michael Ramirez was driving along a roadway. He was being followed by a friend, Nico Galsim, in another car. At approximately 11:30 p.m., defendant and four other men pulled up next to Ramirez's passenger side window in a Ford Taurus. The driver pointed a gun at Ramirez and shouted at him to "Pull over or I'll shoot you."

Ramirez pulled into a parking lot and stopped; Galsim followed suit, although he was unaware of what was happening. Defendant and three men got out of the Taurus; they were armed. The driver remained inside the Taurus. Defendant and his companions forced Ramirez and Galsim out of their respective vehicles. Defendant pointed a gun at Ramirez's head and demanded, "give me your wallet, your money, your phone, everything you have." Defendant ordered Ramirez and Galsim to lie face down on the ground. He patted them down and took their wallets and phones. He also took Ramirez's iPod and some coins from his car. The assailants retreated to the Taurus and drove away, after ordering Ramirez and Galsim to "act casual."

2

After the thieves had left, Ramirez and Galsim drove to Ramirez's house, where they called the police and reported the crimes.

On the morning of April 26, 2010, Gary Noblado was on a ladder, washing windows on the outside of a house. Defendant, with half his face hidden by a bandana, jumped over the fence and approached Noblado. Defendant pointed a gun at Noblado and demanded money. He pulled Noblado off the ladder, patted down Noblado, and took Noblado's cell phone and pocket knife from his pockets. Defendant jumped back over the fence; Noblado had seen another man waiting on the other side of the fence.

2. The Charges, Defendant's First Two Changes of Counsel, and the Change of Plea to Guilty

By information, defendant was charged with three counts of second degree robbery. The information also alleged enhancements for personal use of a firearm as to each robbery count.

Defendant was initially represented by attorney Louisa B. Pensanti, who had been retained to represent defendant through pretrial proceedings for a stated sum. Attorney Pensanti had negotiated a plea offer, but defendant elected not to accept the offer; he elected to proceed to jury trial. In the absence of compensation for the preparation needed for trial, attorney Pensanti asked to be relieved as counsel for defendant. The trial court granted the motion. In December 2010, the court appointed the public defender. Several months later, in September 2011, defendant retained new counsel, Stanley Granville. The public defender was relieved, and attorney Granville substituted in.

On January 13, 2012, defendant entered a change of plea.  He agreed to plead guilty to the three robbery counts, with a sentence of 11 years (five years on count 1, plus four years for the gun use enhancement, plus one year each for counts 2 and 3).  The court continued the matter while the probation department prepared a report, particularly addressing the issues of restitution and custody credits.

3. Attorney Granville's Initial Request to Be Relieved for Conflict of Interest, on the Ground That Defendant Wanted to Withdraw His Plea for Inadequate Advisements

On the day of sentencing, the trial court was ready to proceed to pronouncement of judgment, when attorney Granville interrupted and asked to be heard.  He explained to the court, "There are some problems that have arisen, your Honor.  I am going to have to declare a conflict of interest . . . in this matter.  [Defendant] desires to move the court to withdraw his guilty plea and . . . the basis of that request is two fold [*sic*].  [¶]  First of all, the Court would look at the plea waiver in Section Three, the hearing that's indicated by pre-sentence [*sic*] credits.  There is crossed out a couple of boxes.  [¶] . . . [¶]  And . . . you see that old 4019, 4-0-1-9 is crossed out and 2933.1 is X'd?  [¶] . . . [¶]  [Defendant] indicates to me he wasn't aware that he was not going to be getting the old 4019 credits and that he wasn't privy to the fact that 2933.1 had been X'd out.  [¶]  I personally have no recollection of it.  You may very well be right.  He tells me that the People approached him at some point and indicated that it was going to be a difference, that it should be between the 2933.1 and that actually the prosecuting attorney crossed out that section.  That's one . . . basis for his request to withdraw his

4

guilty plea. [¶] The second is that this happened before I was involved in [defendant's] case. I think he was still represented by the Public Defender. He indicates that the Court, through his Public Defender, indicated to him that he would not be getting a three strikes—would not be getting a three strikes [*sic*] involving a three strikes situation, in other words, pleading guilty to three counts of robbery. [¶] . . . [¶] So I guess specifically what my request is today is to continue the matter over so that his new counsel can prepare a motion pursuant to 1018 allowing him to withdraw his guilty plea."[1]

The court inquired, "Now, you are saying new counsel, and why would I appoint new counsel for you? [¶] . . . [¶] Are you saying . . . that one of the bas[e]s . . . for withdrawal of the plea would be the claim of ineffective assistance of counsel?" Attorney Granville agreed: "It may very well be, your Honor. [¶] I don't have a recollection of adequately explaining to [defendant] his pre-sentence [*sic*] credits. I do note that there is a box that seems to have been scratched out, and it's his impression that he would be getting pre-sentence [*sic*] credits pursuant to the 4019 Rule." The court opined that the issue would likely have been addressed at the taking of the plea, but attorney Granville had no recollection of doing so. The court therefore ordered a

---

[1] Notwithstanding attorney Granville's recitation of what defendant told him had been discussed by the public defender at the change-of-plea hearing while defendant was represented by attorney Granville, defendant expressly acknowledged that his guilty plea would be to three strike convictions for the three robbery counts. As a consequence, should defendant ever be convicted of another offense, he would be ineligible for probation; and if he should be convicted of another felony in the future, he would receive a life (third strike) sentence.

transcript of the plea hearing to be prepared, and continued the matter. Defendant waived his right to be sentenced within 20 days of the plea.

The minute order for the day of sentencing states that the court denied defendant's oral motion to withdraw his plea, but the reporter's transcript does not reflect either that such a motion was actually made or that it was ruled upon. The court did inquire whether the prosecutor would agree to allow defendant to withdraw his plea, but the prosecutor declined. Attorney Granville attempted to clarify that the continued hearing was to review the plea transcript, and "not to litigate the motion to withdraw the guilty plea." The court noted that attorney Granville likely wanted to file some papers: "I mean, right now you're making just an oral motion. There should be something—I would think you would want to file something. You are still representing [defendant], I believe."

4. Appointment of Separate Counsel, Motion to Withdraw Defendant's Plea, and Denial of the Motion

At the next hearing date, the trial court appointed the public defender for the limited purpose of filing a motion to withdraw defendant's plea. The matter was continued thereafter to allow the public defender to prepare the motion; the motion was filed May 24, 2012.

As the discussion at the earlier hearing had suggested, the motion was based on defendant's assertion that the plea agreement was altered after he had signed it. That is, in the portion of the plea agreement dealing with credits, "[a]longside one box is the printed phrase 'Old 4019.' It appears an 'X' was placed in that box, but it also shows

6

scratching out of the 'X.' [¶] . . . To the right of that box is another box, alongside of which appears the printed phrase '2933.1.' That box has an 'X' marked in it. [¶] . . . [Defendant] asserts the one box was scratched out and the second box marked with an 'X' after he initialed and signed the plea agreement." The public defender noted that, because of defendant's conviction of a violent strike felony, he was eligible to earn a maximum of 15 percent conduct credits. He was not eligible to earn half-time credits. The public defender acknowledged that, if attorney Granville had failed to advise defendant at all about the rate of earning conduct credits, such failure would not have provided a ground to withdraw the plea. In *People v. Barella* (1999) 20 Cal.4th 261, the California Supreme Court held that "The credit limitation contained within the Three Strikes law serves a role functionally equivalent to a parole eligibility date, and we conclude that neither the federal [n]or the state Constitution, nor California's judicially declared rules of criminal procedure, required the trial court to advise defendant, prior to his guilty plea, that he would be ineligible for release from prison until he had served four-fifths of his sentence." (*Id*. at p. 263.) The public defender opined that the restriction on credits would not, in itself, provide a valid ground to withdraw the plea. However, the allegation that the plea form had been altered after defendant had initialed and signed the form might arguably form a ground to withdraw the plea.

The People filed a written opposition to the motion. The People pointed out that a motion to withdraw the plea under Penal Code section 1018 is addressed to the sound discretion of the trial court, and that denial of the motion would not be an abuse of

discretion unless the court's ruling "exceeds the bounds of reason." The People also urged that the trial court was entitled to weigh the credibility of defendant's assertion, e.g., that the plea form had been altered after he signed it, and the implicit claim that defendant would not have agreed to the plea bargain had he known that his ability to earn conduct credits would be restricted. Defendant had made no claim, however, that any other portion of the plea form had been altered, yet he had initialed provision 10(d), which expressly advised defendant that a consequence of his plea was "[r]educed earning of custody credits." Defendant had also orally told the court that he had had a full opportunity to discuss the plea with his attorney. The court was therefore not obliged to accept defendant's claims at face value.

Defendant sent a handwritten letter to the court, dated July 3, 2012. The letter stated: "I am giving notice to the Court that I declare the plea agreement VOID and [c]ancelled because I made a mistake in signing the contract and it is VOID because the terms and conditions of the plea agreement were misrepresented to me to induce me to sign the agreement."

The hearing on the motion to withdraw the plea finally came on for hearing on August 3, 2012. The court read defendant's handwritten letter into the record. The public defender proposed to have attorney Granville testify as to the limited issue of his knowledge about any changes to the plea document. Defendant waived his attorney-client privilege for the purpose of that examination. Attorney Granville testified that he had gone over and discussed the provisions of the plea agreement form with defendant.

8

He had prepared the majority of the handwritten portions of the plea agreement, though he had had some assistance from the prosecutor. Attorney Granville recalled that he had placed an "X" in the box indicating that defendant would receive "Old 4019" credits, but the prosecutor informed him that Penal Code section 4019 credits would not apply in this case; she therefore scratched out the "X" in the "Old 4019" box, and marked an "X" in the box for credits under Penal Code section 2933.1. Attorney Granville did not remember precisely, but believed that this had occurred after both he and defendant had filled in and signed the plea agreement form. He also remembered "mentioning it"—i.e., the change—to defendant before the plea was taken. On cross-examination, however, he stated that he did not recall specifically having any discussion with defendant about reduced earning of custody credits. However, defendant "was aware of . . . less credits with a strike than if it was a nonstrike." In response to questioning by the court, attorney Granville agreed that he considered the changes in the law that reduced conduct credits for inmates convicted of violent felonies to be significant, and it was the attorney's custom and practice to advise his clients about the credits they could earn. Attorney Granville testified, "I discussed that with [defendant] at least once. He knew . . . he would have to do 85 percent of the 11 years. I believe we did the math in a general sense as to how much actual time that would calculate out to be."

The public defender argued the motion to the court, conceding that the failure to advise of reduced credits, in and of itself, would not be a ground to withdraw the plea. The additional issue, however, was whether the alteration after the plea agreement had

been initialed and signed had somehow voided the contract. The prosecutor responded that attorney Granville's testimony was that he did discuss with defendant that defendant was pleading to a strike offense, and that such a plea carried with it the reduction in ability to earn credits. Defendant had undisputedly initialed the plea consequences portion of the form, including an express advisement that the ability to earn credits would be reduced. In that context, any alteration to the plea form was insignificant.

Defendant attempted to intervene: "Excuse me, . . . when I signed the—" The court cut defendant off, however, and instructed that the argument was to be conducted by the lawyers. Defendant spoke up again, "Well, because it wasn't—," but the court directed defendant to speak to the public defender, and not to address the court directly. The public defender took the opportunity to consult with defendant at that point. The court inquired whether the parties had anything else to present on the motion to withdraw the plea. The public defender replied, "Nothing that makes a legal difference."

The court then proceeded to summarize the documents and evidence it had reviewed, as well as the substance of the claim. The court was satisfied that defendant had been advised of the reduced credits, and it took into consideration that defendant had expressly told the court at the taking of the plea that he understood everything on the form. The court therefore denied the motion to withdraw the plea.

10

5. Order Relieving Retained Counsel, Appointment of the Public Defender, and

   Sentencing

The matter then proceeded to sentencing. The court asked, "Who's going to represent [defendant] for the purpose of pronouncement of judgment? [¶] It was my recollection that Mr. Granville is still attorney of record for the case." Attorney Granville confirmed the court's understanding, but reminded the court of his request to be relieved because of a conflict of interest. The public defender indicated that he would be able to conduct the pronouncement of judgment proceedings, as he had previously participated in representing defendant before attorney Granville had been retained, and he was "attorney of record at least for the purpose of this motion."

Attorney Granville advised the court that, notwithstanding the ruling on the motion to withdraw the plea, he still felt he had a conflict of interest with defendant, and still wished to be relieved. The court asked, "do you have any objection to that, Mr. Walker?" Defendant answered, "Yes, I have an objection because—" The court interrupted before defendant could answer, however, saying, "Just one second. Let me be real specific. Do you have any objection to me relieving Mr. Granville as your attorney?" Defendant replied, "Yes, I do." Defendant started to explain, saying, "[b]ecause—" but the court cut him off: "I don't want to hear any becauses. That's not going to be something I'm going to listen to at this time unfortunately. I was—I was interested in what your response was. I'd like to have given you what you wanted, and if you wanted to have him relieved, then I would be looking at a unanimous

11

request. . . . [¶] . . . [¶] As it is, Mr. Granville's attorney of record, and he's telling me he has an actual conflict, and I can't, nor do I intend, to go behind his representation. I think, by the way, that the circumstances causing that conflict . . . may not be apparent, but they could probably be figured out if somebody wanted to look behind the circumstances of all of the discussions we have had today. [¶] Mr. Granville, I think that your representation of a conflict is sufficient for me. I'm ordering that you are relieved." The court appointed the public defender as attorney of record for all purposes, including pronouncement of judgment.

The court denied probation and imposed sentence as agreed in the plea bargain: Five years (aggravated term) on the first robbery count, plus four years for the weapon enhancement, plus one year each (one-third the middle term) for each of the other two robberies, for a total of 11 years. The court awarded defendant 713 days of credit in actual custody, plus 107 days in conduct credits, for a total of 820 days.

6. Notice of Appeal, Denial of Certificate of Probable Cause, and Amended Notice of Appeal

Defendant filed an initial notice of appeal, requesting a certificate of probable cause, on the grounds that attorney Granville had given inadequate advice in preparing and taking the plea, and that the trial court had erred in denying the motion to withdraw the plea. The trial court denied the certificate of probable cause. Defendant filed an amended notice of appeal, asserting that the appeal was based on sentencing or other matters occurring after the plea.

Defendant now asserts that the trial court's granting of attorney Granville's motion to be relieved, over defendant's objection and without hearing the ground of defendant's objection, was a deprivation of his constitutional right to counsel of his choice, and reversible per se.

ANALYSIS

I.  THE TRIAL COURT ERRED IN RELIEVING TRIAL COUNSEL OVER DEFENDANT'S OBJECTION WITHOUT MAKING ANY INQUIRY INTO THE NATURE OF THE ASSERTED CONFLICT OF INTEREST

A.  <u>The Sixth Amendment Right to Counsel Is Independent of the Right to a Fair Trial</u>

In *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140 [126 S.Ct. 2557; 165 L.Ed.2d 409], the United States Supreme Court wrote, "The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.'  We have previously held that an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him.  See *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).  Cf. *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932) ('It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice').  The Government here agrees, as it has previously, that 'the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he

13

is without funds.' *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-625, 109 S.Ct. 2646, 109 S.Ct. 2667, 105 L.Ed.2d 528 (1989)." (*Id.* at p. 144 [165 L.Ed.2d 409, 416-417].)

The ability to select one's own counsel (where the defendant does not require appointed counsel) is a substantive guaranty, independent from general considerations of fairness implicit in the notions of due process. In other words, it is not merely an adjunct to the Fifth Amendment's Due Process Clause. (*United States v. Gonzalez-Lopez, supra*, 548 U.S. 140, 145 [165 L.Ed.2d 409, 417].) Although "[i]t is true enough that the purpose of the rights set forth in [the Sixth] Amendment is to ensure a fair trial; but it does not follow that the rights can be disregarded so long as the trial is, on the whole, fair. . . . [¶] So also with the Sixth Amendment right to counsel of choice. It commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best. 'The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause.' [Citing] *Strickland* [*v. Washington* (1984) 466 U.S. 668,] 684-685, 104 S.Ct. 2052, [2064, 2068,] 80 L.Ed.2d 674. In sum, the right at stake here is the right to counsel of choice, not the right to a fair trial . . . ." (*United States v. Gonzalez-Lopez, supra*, 548 U.S. 140, 145-146 [165 L.Ed.2d 409, 417-418].) In *Gonzalez-Lopez*, the trial court had erroneously refused the request of defendant's preferred attorney for admission *pro hac vice* to practice before the court. The United States Supreme Court held that the

14

defendant's Sixth Amendment "right was violated because the deprivation of counsel was erroneous. No additional showing of prejudice is required to make the violation 'complete.'" (*Id.* at p. 146.)

B. <u>The Right to Counsel of Choice Is Not Absolute, But May Be Limited by Other Circumstances</u>

However, "[t]he Sixth Amendment right to choose one's own counsel" is not absolute, but "is circumscribed in several important respects." (*Wheat v. United States* (1998) 486 U.S. 153, 159, [108 S.Ct. 1692, 1697, 100 L.Ed.2d 140, 148].)

For example, the right to counsel requires a minimum standard of competency (except in the case of self-representation). Constitutionally required competency is measured at the threshold by qualification as a member of the bar. Therefore, at a minimum, "Regardless of his persuasive powers, an advocate who is not a member of the bar may not represent clients (other than himself) in court. [Fn. omitted.]" (*Wheat v. United States*, *supra*, 486 U.S. 153, 159 [100 L.Ed.2d 140, 149].)

Another limitation on the right to counsel of one's choice is reflected in the differential treatment of retained, as opposed to appointed, counsel. "Similarly, a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant." (*Wheat v. United States*, *supra*, 486 U.S. 153, 159 [100 L.Ed.2d 140, 149].) The right to one's attorney of choice is afforded greater scope when counsel is retained (i.e., willing to accept employment for whatever fee is agreed), in comparison to when counsel is appointed.

15

Conflicts of interest may also limit the right to counsel of one's choice. As the United States Supreme Court stated in *Wheat v. United States*, *supra*, 486 U.S. 153, 159 [100 L.Ed.2d 140, 149], "Nor may a defendant insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party, even when the opposing party is the Government." (*Ibid.*) The instant case involved a purported conflict of interest. We now examine the circumstances in which a conflict of interest might limit a defendant's Sixth Amendment right to counsel of his or her choice.

C. The Sixth Amendment Right to Counsel Is Subject to Some Limitations by Potential or Actual Conflicts of Interest

Under the Sixth Amendment, a defendant in a criminal case has a right to the assistance of counsel. The constitutional guaranty "entitles the defendant not to some bare assistance but rather to *effective* assistance." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.) As noted, admission to the relevant bar is the initial measure of minimum competency. That is, a defendant is entitled to the reasonably competent assistance of an attorney acting as a diligent and conscientious advocate. (See, e.g., *Strickland v. Washington* (1984) 466 U.S. 668, 686-689 [104 S.Ct. 2052, 2064-2065, 80 L.Ed.2d 674, 692-694]; *United States v. De Coster* (D.C. Cir. 1973) 487 F.2d 1197, 1202.) Included in the right to the effective assistance of counsel is "a correlative right to representation that is free from conflicts of interest." (*Wood v. Georgia* (1981) 450 U.S. 261, 271 [101 S.Ct. 1097, 67 L.Ed.2d 220, 230]; accord, *Leversen v. Superior Court* (1983) 34 Cal.3d 530, 536-537.)

16

"Conflicts of interest broadly embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his [or her] responsibilities to another client or a third person or by his [or her] own interests. (See generally ABA, Model Rules Prof. Conduct (1983) rule 1.7 and com. thereto [hereinafter ABA, Model Rules].)" (*People v. Bonin* (1989) 47 Cal.3d 808, 835.) These conflicts of interest may take any of several forms.

a. Types of Conflict of Interest

i. Multiple Representation

Conflicts of interest may result from representing more than one client in the same proceeding. The question raised in *Wheat v. United States* was, "the extent to which a criminal defendant's right under the Sixth Amendment to his chosen attorney is qualified by the fact that the attorney has represented other defendants charged in the same criminal conspiracy." (*Wheat v. United States*, *supra*, 486 U.S. 153, 159 [100 L.Ed.2d 140, 149].) The United States Supreme Court noted that conflicts of interest arising from multiple representation "engenders special dangers of which a court must be aware. While 'permitting a single attorney to represent codefendants . . . is not per se violative of constitutional guarantees of effective assistance of counsel,' *Holloway v. Arkansas*, 435 U.S. 475, 482, 55 L.Ed.2d 426, 98 S.Ct. 1173 (1978), a court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel." (*Id*. at pp. 159-160 [100 L.Ed.2d 140, 149].) Waivers by the respective defendants in a multiple-representation context are not necessarily sufficient to

17

cure all problems arising from the conflicting interests: "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. . . . Not only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation. [¶] For this reason, the Federal Rules of Criminal Procedure direct trial judges to investigate specially cases involving joint representation." (*Id*. at pp. 160-161 [100 L.Ed.2d 140, 149-150].)

ii. Serial Representation

Conflicts of interest may arise not only out of multiple representation in a single case, but also from representation of different clients in different proceedings. In *Leversen v. Superior Court, supra,* 34 Cal.3d 530, defense counsel for one defendant in a multi-defendant case realized in the middle of trial that his firm had previously represented a witness for the codefendant. Because the codefendant knew the witness by a different name, defense counsel had not recognized his firm's connection to the witness's separate case. It was not until the witness appeared in court that he made the connection. (*Id*. at pp. 533-534.) Defense counsel informed the court that, as soon as the witness was called to the stand, he would have to declare a conflict of interest and move for a mistrial. Even if the witness would claim his Fifth Amendment privilege on the stand, and would refuse to testify, defense counsel nevertheless reiterated that the conflict still existed, and he would still have to ask to be relieved. (*Ibid*.) The defendant declined

18

to waive the conflict.  The trial court denied defense counsel's motion to be relieved, on the theory that the witness was not a codefendant, and his refusal to testify would eliminate any need for defense counsel to cross-examine him.  (*Id*. at p. 534.)

Having denied defense counsel's request to be relieved, the court proceeded with the trial.  In front of the jury, the witness was called to the stand, gave his name, and refused to answer questions whether he was present at the time and place of the crimes.  The witness was excused, and the codefendant re-took the stand, identifying the witness as one of the persons she claimed had coerced her to participate in the crimes.  Defense counsel announced that he was "not able to examine" the codefendant on cross-examination, because a conflict of interest still existed.  First, the witness "'has been asserted as an uncharged codefendant in this particular case,'" whereas, second, defense counsel's firm "was representing [the witness] in a similar jewelry store robbery prosecution," and third, defense counsel "might have to use confidential information in calling rebuttal witnesses."  (*Leversen v. Superior Court*, *supra*, 34 Cal.3d 530, 534.)  He renewed his request to be relieved on that basis.  The trial court denied the motion to be relieved, "declaring its inability to see any possible conflict in light of the facts that [the witness] was not a defendant and had declined to testify and that it was too late in the trial to recall [the defendant] for examination on matters testified to earlier."  (*Ibid*.)

The court did continue the matter, however, to hear further argument on the motion to be relieved.  At that hearing, defense counsel's firm submitted a memorandum signed by several of the firm's attorneys, representing "'as officers of the court' that 'a

19

conflict of interest has arisen between other clients of the firm and [the defendant]' and that 'they cannot adequately or fully represent [the defendant] without violating the privilege of other clients.' The memo stated they would immediately ask to be relieved as [the witness's] counsel in the other matters in which they represented him, and at the hearing counsel stated that those requests had been granted. The memo further said that the firm 'possesses privileged information from a client other than [the defendant] germane to [the defendant's] trial; counsel cannot discuss that information with [the defendant] without violating the privilege, and cannot independently pursue it without adversely affecting the interests of another client and further violating the privilege.'" (*Leversen v. Superior Court*, *supra*, 34 Cal.3d 530 at pp. 534-535.) The court again denied the motion to be relieved, and denied a motion for mistrial. The court "ruled that the showing of conflict was insufficient, declaring that it, not counsel, must be the 'final arbiter' of the existence of a material conflict of interest." (*Id*. at p. 536.) Defense counsel maintained that "the conflict was based on privileged information of which counsel could not reveal the nature or source 'other than to tell the court it is privileged and that we feel, in accordance with our oath, that it is germane and that it creates a conflict.' Counsel further asserted that a substitute attorney might 'very well get the information from other sources.' The court told counsel that 'there has to be some clue to the court' and that here there was no basis for even a 'reasonable, informed speculation' that a disqualifying conflict existed." (*Ibid*.)

It was in this posture—being directed to proceed with representation when defense counsel felt that a conflict of interest existed between two clients whom he had represented in different proceedings—that he sought a writ of mandate. The California Supreme Court ruled that conflicts of interest between clients in different proceedings, no less than conflicts between multiple clients in a single proceeding, "may impair a defendant's constitutional right to assistance of counsel." (*Leversen v. Superior Court*, *supra*, 34 Cal.3d 530, 538.) That is, "An attorney is forbidden to use against a former client any confidential information that was acquired during that client relationship. [Citations.] Moreover, the attorney has a duty to withdraw, or apply to a court for permission to withdraw, from representation that violates those obligations. (Rules Prof. Conduct, rule 2-111(B)(2).) So important is that duty that it has been enforced against a defendant's attorney at the instance of his former client (who was also a codefendant) even at the expense of depriving the defendant of his choice of counsel. [Citation.]" (*Ibid*.) The California Supreme Court was persuaded that, with respect to conflicts of interest requiring withdrawal, "counsel 'is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop,'" and that "defense attorneys have an obligation to advise the court of any conflict of interest; and that attorneys are officers of the court, and their representations concerning conflicts 'should be given the weight commensurate with the grave penalties risked for misrepresentation.'" (*Id*. at p. 537.) The Supreme Court noted, however, that "the trial court remains free to deal with 'untimely motion[s] for separate counsel . . . made for

21

dilatory purposes' and to 'explor[e] the adequacy of the basis of defense counsel's representations regarding a conflict of interest without improperly requiring disclosure of the confidential communications of the client.'" (*Ibid*.) The court struck a balance between counsel's declaration of conflict, which should be given "great weight," on the one hand, and the trial court's power and duty to make inquiries into the basis for the claim underlying a request to relieve counsel, on the other. In *Leversen*, the trial court had had many indicia before it of the conflict, its nature, and its actual existence: trial defense counsel and members of the firm had expressly asserted the conflict, the court was informed of the actuality of the representation of two different clients in two different proceedings, one of the clients was identified by other witnesses as the (uncharged) "mastermind" of the criminal scheme for which the other client was on trial. Rather obviously, information obtained in confidence from one client could damage the interests of the other client, placing the attorney in an untenable position, requiring either the betrayal of confidences (using the information) or inability to represent the client adequately (being constrained not to use the information). The inquiry undertaken by the court, together with the good faith representations of defense counsel to the court, combined to establish the conflict as a matter of law. The trial court had therefore erred in denying defense counsel's motion to be relieved. (*Id*. at p. 537-540.)

The instant case differs from *Leversen* in two significant respects. First, unlike the client in *Leversen*, defendant here attempted to object to relieving trial counsel, and maintains that he would waive the asserted conflict of interest. Second, more

22

importantly, the trial court here made no inquiry at all into the nature of the conflict of interest. Even though, under the state Constitution at least, trial judges should give "great weight" to an attorney's assertion of a conflict of interest, the court still has its independent duty to protect the defendant's right to representation by retained counsel of choice. The court's duty includes the duty to inquire, so far as possible without requiring counsel to divulge confidential information, into the nature of the claimed conflict. Here, the court made no such inquiry.

iii. Financial Conflicts of Interest

Another potential source of a conflict of interest affecting representation is the attorney's acquisition of a financial interest that may potentially be adverse to the client. For example, "Conflicts may also arise in situations in which an attorney undertakes representation of a defendant in exchange for the literary rights to a portrayal or account based on information relating to the representation. [Citations.]" (*People v. Bonin*, *supra*, 47 Cal.3d 808, 836.) "'A grave conflict of interest can arise out of an arrangement between a lawyer and an accused to give to the lawyer the right to publish books, plays, articles, interviews or pictures, or related literary rights concerning the case. . . . [It] may place the lawyer under temptation to conduct the defense with an eye on the literary aspects and its dramatic potential. If such an arrangement or contract is part of the fee, in lieu of the fee, or a condition of accepting the employment, it is especially reprehensible.' [Citations.]" (*Ibid.*; however, cf. *People v. Doolin* (2009) 45 Cal.4th 390, 420-421 [no

financial conflict of interest arose from counsel's lump-sum compensation agreement in capital representation case].)

### iv. Arguing One's Own Incompetence and Irreparable Breakdown of the Attorney-Client Relationship

We are familiar with two additional common sources of conflict of interest, which might create such a serious conflict between the attorney and the client that constitutionally adequate representation is not possible.

The California Supreme Court recognized in *People v. Smith* (1993) 6 Cal.4th 684: "It is true that when a defendant claims after trial or guilty plea that defense counsel was ineffective, and seeks substitute counsel to pursue the claim, the original attorney is placed in an awkward position," which could possibly involve a conflict of interest sufficient to disable the proper attorney-client relationship. (*Id*. at p. 694.) The California Supreme Court discussed the matter of the appointment of separate or substitute counsel for purposes of bringing a motion attacking the competence of a defendant's attorney. The issue was whether the standard was different at an early or late stage of the proceedings. "The attorney must defend against charges from the very client he or she is supposed to be representing. The potential for conflict is obvious. But the same potential for conflict exists before trial as well. And the conflict is unavoidable. [¶] . . . [¶] Similarly, it is difficult for counsel to argue his or her own incompetence. However, the possibility that the defense might benefit from such an argument can arise at any stage of the proceedings. . . . [¶] . . . [¶] Appointment of

24

counsel for the purpose of arguing that previous counsel was incompetent, without an adequate showing by defendant, can have undesirable consequences. In *People v. Makabali* (1993) 14 Cal.App.4th 847 [18 Cal.Rptr.2d 72], the trial court appointed second counsel to investigate a possible motion to withdraw a guilty plea on the basis of ineffective assistance of counsel. New counsel did not make the motion. On appeal, appointed appellate counsel, i.e., the third attorney, claimed (unsuccessfully) that the second was incompetent for not claiming the first was incompetent. The spectacle of a series of attorneys appointed at public expense whose sole job, or at least a major portion of whose job, is to claim the previous attorney was, or previous attorneys were, incompetent discredits the legal profession and judicial system, often with little benefit in protecting a defendant's legitimate interests. [¶] We note also that in *People v. Makabali*, *supra*, 14 Cal.App.4th 847, the original attorney was apparently not relieved of further representation of the defendant. He represented the defendant at sentencing, after the second attorney did not move to withdraw the plea. (*Id*. at p. 850.) We are unaware of any authority supporting the appointment of simultaneous and independent, but potentially rival, attorneys to represent defendant. When a *Marsden*[2] motion is granted, new counsel is substituted for all purposes in place of the original attorney, who is then relieved of further representation. If the *Marsden* motion is denied, at whatever stage of the proceeding, the defendant is not entitled to another attorney who would act in effect as a watchdog over the first. [¶] We stress, therefore, that the trial court should appoint

_____

[2] *People v. Marsden* (1970) 2 Cal.3d 118, 124-125.

substitute counsel when a proper showing has been made at any stage. A defendant is entitled to competent representation at all times, including presentation of a new trial motion or motion to withdraw a plea. For the reasons identified in *People v. Fosselman*, *supra*, 33 Cal.3d at pages 582-583, justice is expedited when the issue of counsel's effectiveness can be resolved promptly at the trial level. In those cases in which counsel *was* ineffective, this is best determined early. Thus, when a defendant satisfies the trial court that adequate grounds exist, substitute counsel should be appointed. Substitute counsel could then investigate a possible motion to withdraw the plea or a motion for new trial based upon alleged ineffective assistance of counsel. Whether, after such appointment, any particular motion should actually be made will, of course, be determined by the new attorney. [¶] We stress equally, however, that new counsel should not be appointed without a proper showing. A series of attorneys presenting groundless claims of incompetence at public expense, often causing delays to allow substitute counsel to become acquainted with the case, benefits no one. The court should deny a request for new counsel at any stage unless it is satisfied that the defendant has made the required showing. This lies within the exercise of the trial court's discretion, which will not be overturned on appeal absent a clear abuse of that discretion. [¶] We thus hold that substitute counsel should be appointed when, and only when, necessary under the *Marsden* standard, that is whenever, in the exercise of its discretion, the court finds that the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel (*People v. Webster*, *supra*, 54

26

Cal.3d at p. 435), or, stated slightly differently, if the record shows that the first appointed attorney is not providing adequate representation or that the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citation]. This is true *whenever* the motion for substitute counsel is made. There is no shifting standard for the trial court to apply, depending upon when the motion is made." (*Id*. at pp. 694-696.)

As the California Supreme Court has made clear, appointment of separate counsel may be required if, and only if, there has been an initial showing that the first attorney was incompetent, such that the first attorney would be unable, because of a conflict of interest, to argue his or her own incompetence in bringing a motion, at whatever stage of the proceedings such a motion would be required. The California Supreme Court's pronouncements in *Smith* took place in the context of discharging one *appointed* attorney in favor of a second. If a defendant has retained counsel, the retained attorney may be discharged (subject to limitations) without necessity of a *Marsden* showing. (*People v. Ortiz* (1990) 51 Cal.3d 975, 984.) Here, unlike *Smith*, defendant did not seek to discharge his retained counsel. The issue of a conflict of interest in arguing one's own incompetence is, however, a potentiality in either retained or appointed representation.

However, the need to argue one's own incompetence in a motion for, e.g., a new trial, or, as here, to withdraw a plea, does not of itself necessarily constitute a conflict of interest sufficient to interfere with a defendant's Sixth Amendment right to assistance of counsel. That is, even if "it is difficult for counsel to argue his or her own

27

incompetence," (see *People v. Smith, supra,* 6 Cal.4th 684, 694) the cases do not suggest that it is impossible for counsel to do so; in other words, it is not necessarily the case that asking counsel to make a motion arguing his or her own incompetence constitutes a conflict of interest so severe that representation cannot continue.  (See *People v. Sanchez* (2011) 53 Cal.4th 80, 89 ["'It is difficult for counsel to argue his or her own incompetence' [citation], but we neither suggested it is impossible for counsel to do so nor that a trial court should presume a defendant is requesting substitute counsel. . . ."].) Even a conflict of interest such as requiring an attorney to argue for his or her own incompetence does not automatically require appointment of separate counsel. "Instead, . . . 'substitute counsel should be appointed when . . . necessary under the *Marsden* standard, that is whenever, in the exercise of its discretion, the court finds that the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel [citation], or, stated slightly differently, if the record shows that the first appointed attorney is not providing adequate representation or that the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citation].' [Citation.]"  (*Ibid.*)

The instant case involved—at least initially—one of these well-recognized potential conflicts of interest:  requiring an attorney to argue for his or her own incompetence.  When attorney Granville first requested to be relieved, on the ground of an asserted conflict of interest, he explained that defendant wished to withdraw his plea

for two identifiable reasons having to do with the earning of conduct credits, and the three strikes treatment of his current convictions.  Both grounds, inferentially, would implicate the competence of attorney Granville's representation of defendant in the context of the plea bargain.  In other words, it would be difficult for attorney Granville to undertake a motion to withdraw the plea, if the grounds were based upon having to argue his own incompetence.  (See, e.g., *People v. Stewart* (1985) 171 Cal.App.3d 388, 394-395.)

Here, the trial court did appoint separate counsel, perhaps too readily and without making the determination required under *Sanchez* and *Smith*, i.e., whether the record showed that attorney Granville was not providing adequate representation (and so would be conflicted in arguing for his own incompetence in bringing a motion to withdraw the plea), or whether the attorney and client had become embroiled in an irreconcilable conflict.  Nevertheless, the court did appoint separate counsel for purposes of bringing the motion, in an abundance of caution, to address the potentiality for a conflict of interest.  The public defender filed the motion, which was then heard and denied.

D.  <u>When the Court Is Informed of a Possible Conflict of Interest, the Court Must Inquire to Determine Whether a Potential or Actual Conflict Exists, and Whether it Could Impair the Defendant's Sixth Amendment Rights</u>

A trial court may become aware, through any of several means, of the possibility of a conflict of interest between a defendant and his or her counsel.  The courts have consistently recognized that, whenever a trial court "knows or should know that defense

29

counsel has a possible conflict of interest with his [or her] client, it must inquire into the matter [citations] and act in response to what its inquiry discovers [citation]." (*People v. Jones* (1991) 53 Cal.3d 1115, 1136.)  In federal jurisprudence, the necessary inquiry may be made pursuant to a *Curcio* hearing (*United States v. Curcio* (2d Cir. 1982) 680 F.2d 881):  "At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.  [Citation.]  The ultimate goal of these procedures is to permit the court to determine whether the defendant's waiver of his right to conflict-free counsel is knowing and intelligent.  [Citation.]" (*United States v. Perez* (2d Cir. 2003) 325 F.3d 115, 119.)[3]

In *People v. Bonin*, *supra*, 47 Cal.3d 808, 837-838, the California Supreme Court held that the failure by the trial court to make the necessary inquiry, or to respond to what the inquiry shows, is reversible error only if the defendant shows "that an actual conflict of interest existed and that that conflict affected counsel's performance."  Defendant here

---

[3] Not all federal courts require the formality of a *Curcio* hearing.  See *United States v. Scarfo* (E.D. Pa. 1997) 980 F.Supp. 803, 808.

relies on cases stating to the effect that the erroneous deprivation of the Sixth Amendment right to counsel of choice is a structural error, and reversible per se without a showing of prejudice.

It is difficult, however, to mandate that a defendant must show both that an actual conflict existed, and that the conflict impaired counsel's performance, when the defendant maintains that there was no conflict of interest and that counsel should not have been discharged.

As we have stated, when attorney Granville first asserted the possible existence of a conflict of interest, the sole ground of conflict was that defendant wanted to bring a motion to withdraw his plea, and that the grounds for the motion might involve attorney Granville having to argue for his own incompetence. That conflict of interest was addressed by the appointment of separate counsel for the purpose of bringing the motion. Appointed counsel did file the motion, and the motion was fully explored, heard, and denied.

Thereafter, all that remained in the case was the imposition of the sentence as agreed in the terms of the bargain. Nevertheless, attorney Granville asserted that he still wanted to withdraw, and still felt that a conflict existed. The court refused to make any inquiry whatsoever into the nature of the conflict.

After denying the motion to withdraw the plea, the trial court remarked, "I think, by the way, that the circumstances causing that conflict . . . may not be apparent, but they could probably be figured out if somebody wanted to look behind the circumstances of

31

all of the discussions we have had today." The previously articulated conflict of interest—having to argue one's own incompetence—had been addressed by the appointment of a different attorney to bring the motion to withdraw the plea. After the motion was denied, no actions that remained to be performed in defendant's case would require any exercise of professional discretion, or legal reasoning or acumen on the part of the attorney representing defendant. Only pronouncement of the agreed-upon judgment remained.

In this posture, despite the trial court's remarks, the ground of conflict of interest was *not* apparent. Any conflict of interest engendered by defendant's desire to bring a motion to withdraw his plea had been answered. Here, unlike in other cases, the conflict did not result from the representation of multiple clients. There was no prospect of compromise of the duty of loyalty or the duty of zealous representation toward one client, because of confidential information obtained from a different client. Contrary to the court's surmise—that the ground of conflict of interest could be "figured out" from the earlier proceedings—once the motion had been decided, no ground of actual or potential conflict is readily discernible. Attorney Granville's concerns had been addressed when independent counsel had been appointed, and had evaporated with the decision on the motion. The trial court made no inquiry whatsoever, even a cursory one, to ascertain the source of the alleged conflict of interest, beyond what had already been addressed (asserting one's own incompetence in a motion to withdraw the plea).

32

Nor does the record support the existence of an irremediable breakdown in the attorney-client relationship. Attorney Granville, testifying at the hearing on the motion to withdraw his plea, disagreed with defendant's assertions in regard to the motion, but his own memory of the events was not altogether distinct. The matter was drawn as one of differing recollections between witnesses, rather than accusing defendant of deliberate falsehood. Attorney Granville may have been left with the belief that defendant falsely accused him of incompetence, or that defendant may have lied in his hearing testimony, but such a "conflict" was compatible with continued representation. Defendant manifestly did not believe there had been an irreparable breakdown in their relationship; he objected to the motion to relieve counsel, although he was prevented from stating any grounds. Attorneys commonly represent clients who lie, and who distrust their counsel, and they are able to do so professionally and competently, within the effective assistance mandate of the Sixth Amendment.

In this case, there was no occasion for any disagreements between defendant and attorney Granville to manifest themselves. The only matter that remained was the pronouncement of the sentence. No advocacy for a particular sentence was required; the sentence to be imposed was that agreed to in the plea bargain. Moreover, to the extent there was any issue as to the custody credits defendant would receive, or his three strikes status, defendant's concerns in those areas had been addressed in the motion to withdraw the plea, and those matters had already been determined adversely to defendant. There was, to all appearances, no actual or potential conflict of interest which would have

prevented attorney Granville from competently representing defendant at the sentence pronouncement proceeding; if such a conflict existed, it was not obvious, and the trial court should have inquired further to discover an articulable ground of such conflict. The failure to make the inquiry erroneously deprived defendant of his Sixth Amendment right to counsel of his choice.

II. ALTHOUGH THE TRIAL COURT ERRED IN FAILING TO INQUIRE INTO THE NATURE OF AN ASSERTED CONFLICT OF INTEREST, AND EVEN THOUGH THE ERROR DEPRIVED DEFENDANT OF THE SIXTH AMENDMENT RIGHT TO COUNSEL OF HIS CHOICE, REVERSAL IS NOT REQUIRED UNDER THE CIRCUMSTANCES OF THIS CASE BECAUSE NO EFFECTIVE RELIEF CAN BE AFFORDED TO DEFENDANT; THE APPEAL MUST BE DISMISSED AS MOOT

Even if we accept defendant's argument that the trial court erred in relieving attorney Granville, that the error resulted in a deprivation of defendant's Sixth Amendment right to counsel of his choice, that the error is a structural error going to the substance of the Sixth Amendment right, and that structural error requires reversal per se, without regard to any issue of prejudice, we nevertheless determine that reversal is not required in this case. Rather, we are confronted with circumstances in which, even if the judgment were reversed, the reversal would be fruitless because no effective relief can be granted to defendant.

A reversal and remand for the trial court to conduct an inquiry into the nature of the alleged conflict of interest would achieve either one of two identical results: The

34

inquiry might establish that there was, indeed, an actual conflict of interest between attorney Granville and defendant, such that the attorney could not meet the constitutional obligation to represent defendant effectively. Such a conflict could require the court to disqualify or discharge the attorney, in which case the court would appoint new counsel to stand with defendant while the agreed-upon sentence is again pronounced. Alternatively, a hearing might establish that there was no actual conflict or no serious potential conflict between defendant and attorney Granville, so that the trial court should not have relieved the attorney from representation. In such a case, attorney Granville would be obligated to stand with defendant while the court yet again imposes the agreed-upon sentence. No purpose would be served by forcing the trial court to go through the motions of determining whether an actual conflict, or a serious potential for conflict, of interest existed between defendant and attorney Granville. No matter what the outcome of the hearing, no matter what attorney would ultimately represent defendant, the identical sentence and judgment would be re-imposed.

The law does not require the performance of idle acts. (Civ. Code, § 3532; see also *People v. Coelho* (2001) 89 Cal.App.4th 861, 889 ["[R]eviewing courts have consistently declined to remand cases where doing so would be an idle act that exalts form over substance."].) Where no effective relief can be granted, the appeal is moot, and will be dismissed. (*People v. Travis* (2006) 139 Cal.App.4th 1271, 1280 ["'When no effective relief can be granted, an appeal is moot and will be dismissed.'"].) Here, a reversal and remand would result only in an exercise in futility, and would not alter the

35

outcome of the judgment and sentencing in any respect. Accordingly, we deem the appeal moot, and we order it dismissed.

## DISPOSITION

Even if defendant is correct that the trial court below violated his Sixth Amendment right to counsel of his choice when it relieved his attorney from representation over defendant's objection and without making any inquiry into the nature of the alleged conflict of interest, no practical purpose would be served by reversal and remand to conduct a proper inquiry. Either original counsel was improperly relieved, and would continue to represent defendant while the agreed-upon sentence is re-imposed, or counsel was properly relieved, and substitute counsel properly represented defendant while the agreed-upon sentence was imposed. Inasmuch as no effective relief can be granted to defendant, and the law does not require the courts to engage in idle acts, we conclude that the appeal is moot. Accordingly, we order the appeal dismissed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

J.

We concur:

HOLLENHORST

Acting P. J.

KING

J.

36